IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                     PLAINTIFF

v.                         Criminal No. 05-20076-001

HARDRICK JEROME WOODS                               DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Hardrick Jerome Woods is charged with felon in possession of a firearm. Trial is scheduled for February 6, 2006. On December 30, 2005, defendant filed motions to suppress statement and evidence. (Docs. 15, 16). The government responded on January 12, 2006. (Docs. 18, 19). A hearing was held on January 20, 2006. Witnesses were ATF Special Agent Ryan McCormack, defendant, and defendant's mother Rosie Woods.

DISCUSSION

On June 7, 2005, the undersigned issued a warrant authorizing a search of defendant's house and property for firearms. (Govt's Ex. 2). The warrant issued based on the application and affidavit of Agent McCormack. (Govt's Ex. 1). During the search, a handgun was seized and defendant gave a statement to law enforcement officers admitting ownership and possession of the gun. In the instant motions, defendant challenges the sufficiency of the warrant and the validity of his statement.

*Sufficiency of Warrant*

Defendant argues that McCormick's affidavit failed to establish the reliability of the informant and contains stale information. For reasons set out below, I disagree.

The affidavit identifies the informant as James Ray Jones, the son of defendant's ex-girlfriend, who is on parole and has recently been arrested by the Fort Smith Police Department and is awaiting a parole revocation hearing. The affidavit further states that since his arrest Jones has provided information to Officer Grubbs of the Fort Smith Police Department regarding a burglary which led to a search warrant on May 12, 2005, resulted in the recovery of over $2500 worth of stolen merchandise. Further, Grubbs has advised McCormick that the information Jones provided was very accurate.

McCormick relates in the affidavit that Jones told him that defendant is a convicted felony who possesses firearms; while in defendant's residence on May 11, 2005, Jones observed a pistol and a sawed-off shotgun; the pistol was tucked in defendant's chair in the living room and the shotgun was on the other side of the chair; the pistol was black and had white tape on the handle; the shotgun was pump-action with a pistol grip and the barrel sawed off just past the magazine tube; Jones has another pistol he keeps in the bedroom but Jones did not observe the pistol that day. Jones described defendant's residence as a blue and white house and gave the address, stating there was a Rottweiler dog in the backyard.

McCormick continues in the affidavit that he went to the residence and confirmed defendant's address and the presence of a Rottweiler dog. McCormick also confirmed that defendant is a felon. A search of water department records revealed the addressed was billed to defendant. McCormick spoke again with Jones on May 24, 2005, who identified photographs of the defendant and the residence and provided an interior layout of the residence. Jones stated he believed the shotgun was a 12 gauge with a wood stock.

McCormick further stated in the affidavit that "[b]ased on my experience in conducting investigations of firearms violations, persons do not rid themselves of firearms as readily as other objects, such as narcotics. Furthermore, firearms taken in by a person tend to remain with the person for an extended period of time." (Govt. Ex. 1, Para. 10). McCormick asserted his belief that defendant had in his possession at his residence evidence of the crime of possession of a firearm by a convicted felon.

The Fourth Amendment provides that no warrants shall issue but upon probable cause, supported by oath or affirmation. U.S. Const. Amend. IV. Probable cause exists if, under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 230, 236 (1983); *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002).

Information provided by an informant may be sufficient to establish probable cause "if the tip is corroborated by independent evidence." *Id.* (Citation omitted). Such tip may be shown sufficiently reliable where the informant has previously provided reliable information or the tip is corroborated by independent evidence. *U.S. v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005) (citation omitted). Further, the "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand," entitles a tip to greater weight than might otherwise be the case. *Illinois v. Gates*, 462 U.S. at 234.

In this case, the affidavit sufficiently establishes the reliability of informant Jones. It contains Jones' detailed descriptions of defendant, defendant's residence, and the guns observed at the residence. It further contains McCormick's independent verification of defendant's status as a felon

and that the residence belonged to defendant and was as described by Jones. The affidavit also specifies that Jones had provided recent reliable information to the Fort Smith Police Department.

Regarding staleness, defendant argues that the affidavit made no showing of probable cause to believe firearms would be at defendant's residence at the time the warrant issued. Defendant points out that McCormick was advised of firearms at defendant's residence on May 11, 2005, but waited until June 7, 2005, to request the warrant.

At the hearing, McCormick offered that press of other business kept him from seeking the warrant sooner. He also stated that he used the time to procure other agents to assist him with the search and confirm or follow up on information provided by Jones. McCormick stated that the pistol retrieved during the search was not the same caliber described by Jones but had white tape on the handle and was stuck in a chair cushion as earlier related by Jones. No other guns were located but ammunition of differing calibers was found.

"It is axiomatic that probable cause must exist at the time of the search and not merely at some earlier time." *U.S. v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005)(citing *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998). "There is no bright line test for determining when information is stale" and probable cause "cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993). "Rather, the timeliness of the information depends on the circumstances of the case, including the nature of the crime under investigation and the property sought in the search." *Kennedy*, at 1141 (citing *United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997)).

Here, the affidavit sets out reliable information that defendant, a convicted felony, was in possession of guns on May 11, 2005, and had hidden a firearm in a chair cushion. The affidavit, signed a few weeks later, contained the common sense observation that persons do not easily dispose of firearms. I conclude the affidavit contained information sufficient to establish a fair probability that firearms would be found at the defendant's residence.

*Statement*

Defendant contends that when he advised officers that the firearm located in the residence belonged to him, he was in custody but had not been advised of his *Miranda* rights in violation of the Fifth Amendment. The government counters that defendant was not in official custody but, in any event, had been *mirandized* as a precautionary measure.

McCormick testified that six officers, including himself, arrived at defendant's residence on June 7, 2005, to execute the warrant. At the time, defendant was home alone and McCormick escorted him to the front porch while the search took place. McCormick read defendant his *Miranda* rights from a card and defendant said he understood. Another officer, Glenn Cook, was present. McCormick usually fills out a rights form but did not do so in this instance and doubts he had the forms with him. McCormick explained that although defendant was not in custody, he nevertheless read him his rights as a precautionary measure because of defendant's continued presence at the search.

McCormick's report of the search (Joint Exs. 1, 1a[1]) states that he advised defendant of his *Miranda* rights shortly after the officers arrived. The report also states that after advising defendant

---

[1] Joint Ex. 1, an unsigned, undated report of the search, was received at the hearing. After the hearing, the government forwarded Ex.1a, the signed and dated report.

of his rights, McCormick asked him if he had firearms in the residence and defendant responded he did not have any firearms.

McCormick testified that at one point during the search agent Vittitow came out onto the porch and asked defendant about firearms in the house and defendant denied having any firearms. Vittitow then stated they had already found one and displayed it. Defendant responded, "Oh, yes, that one's mine," explaining that his uncle gave it to him a month ago. Defendant then admitted he was a felon and not supposed to have guns and said that was the only gun he possessed.

McCormick gave conflicting testimony regarding defendant's custodial status during the search. He first offered that defendant would have been detained if he had tried to leave but on later questioning offered that defendant was free to leave the scene. McCormick said he was not planning on arresting defendant that day and did not do so. Rather, he presented the case to the grand jury and defendant was arrested after an indictment was returned against him.

McCormick further stated that while the search was wrapping up, McCormick's mother and girlfriend arrived and the mother said she gave the gun to McCormick because he had snakes in the house. The mother advised defendant to call his attorney and he did so.

Defendant testified he was "never" advised of his rights by McCormick. He recalled that when first asked about firearms by officers, he told them he had no guns. After this, his mother arrived and he talked to his attorney. Then, when the officer brought out the gun, he admitted the firearm belonged to him. Defendant's mother, Rosie Lee Woods, stated that when she arrived, the search was in progress and several officers were on the porch. She told McCormick he needed to telephone his attorney and they both spoke on the phone to the attorney on the porch. Later, the officer came out of the house with the gun.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. *Miranda* warnings are required when there has been such a restriction on a person's freedom as to render him "in custody." "It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). In deciding whether a person is "in custody," the Eighth Circuit instructs:

> The "ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam) (internal marks omitted). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson*, 516 U.S. at 112, 116 S.Ct. 457 (footnote omitted). Thus, the critical inquiry is not whether the interview took place in a coercive or police dominated environment, but rather whether the defendant's "freedom to depart was restricted in any way." *Mathiason*, 429 U.S. at 495 97 S.Ct. 711. In answering this question, we look at the totality of the circumstances while keeping in mind that the determination is based "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 322-23, 144 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

*U.S. v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004); *See U.S. v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004).

I find that defendant's freedom of movement was restricted at the search scene to a degree associated with formal arrest so to render him "in custody" and that *Miranda* warnings were required prior to questioning tending to elicit incriminating answers. I further find, however, that McCormick

gave *Miranda* warnings prior to the questioning of defendant and that defendant's statements to officers were voluntary and did not violate the Fifth Amendment.

The hearing evidence strongly suggests, despite contrary testimony by McCormick, that defendant was not free to leave the search scene. Numerous officers arrived to conduct the search. Defendant was escorted to the porch and stayed there in the presence of McCormick and other officers during the search. Defendant was not advised he could leave the scene. It appears that officers were exercising their "limited authority to detain the occupants of the premises while a proper search is conducted" pursuant to "a warrant to search for contraband found on probable cause." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Although McCormick testified he had no intention of placing defendant under arrest that day, there is no indication he told defendant of this fact. While defendant waited on the porch during the search, officers asked him about his illegal possession of firearms. In my view, a reasonable person in defendant's position would not have felt he was at liberty to refuse to answer the questions and leave the premises.

The hearing evidence further tends to show, contrary to the testimony of defendant, that McCormick *mirandized* defendant on initial contact. McCormick testified that at the search scene, although he did not consider defendant "in custody," he thought it best to go ahead and give the *Miranda* warnings because the plan was to have defendant remain on the premises during the search. At the hearing, McCormick displayed some confusion as to whether defendant was free to leave the scene. McCormick's testimony leads me to believe he did, in fact, give the warnings as a precautionary measure because he was unsure about the matter of custody.

I find that the government has shown defendant was advised of his *Miranda* warnings and voluntarily waived those rights prior to answering questions posed by the officers at the search scene.

There is nothing here to suggest that this is one of those "rare cases" in which a defendant's self-incriminating statement is nevertheless "compelled" by threats, violence, or direct or implied promises despite the fact he received *Miranda* warnings. *See U.S. v. Astello*, 241 F.3d 965, 966-67 (8th Cir. 2001). I conclude the defendant's statements were voluntarily given. *See David v. North Carolina*, 384 U.S. 737, 742 (1966)(a confession is involuntary where given under circumstances that the defendant was coerced or his will overborne).

CONCLUSION

Based on the above, I recommend that defendant's motions to suppress be denied. **The parties have until Friday, January 27, 2006, at 5:00 p.m. in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

DATED this 23rd day of January 2006.

/s/Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE